The ROYAL BANK OF CANADA,
Plaintiff-Appellee,

v.

TRENTHAM CORPORATION,
Defendant-Appellant.

No. 80–1744.

United States Court of Appeals,
Fifth Circuit.*
Unit A

Dec. 21, 1981.

Rehearing Denied Jan. 28, 1982.

Jon Mercer, Houston, Tex., for defendant-appellant.

Kelley, Ryan & Merrill, Joseph W. Ryan, Houston, Tex., for plaintiff-appellee.

* Former Fifth Circuit case, Section 9(1) of Public

Before RUBIN, RANDALL and TATE, Circuit Judges.

RANDALL, Circuit Judge:

This suit was brought by the Royal Bank of Canada ("Royal Bank") for recognition and enforcement in the United States of a default judgment of $250,000 plus interest entered in the Court of the Trial Division of the Supreme Court of Alberta, Judicial District of Calgary, on October 11, 1978. The Alberta suit concerned a contract of guaranty by which Defendant Trentham Corporation agreed to guarantee payment of all liabilities up to $250,000 owed to Royal Bank by Trentham Canada. The present suit was brought in the United States District Court for the Southern District of Texas. The trial court, in a thorough opinion excellent in all respects, granted summary judgment to Royal Bank. *Royal Bank of Canada v. Trentham Corp.*, 491 F.Supp. 404 (S.D.Tex.1980). However, because of an intervening change in Texas law, we vacate the district court's judgment and remand for further proceedings.

Because the litigation was based on diversity of citizenship, the federal district court considered whether the Canadian judgment would be recognized under Texas law. In deciding that the foreign judgment would be recognized, the court considered the argument that because an Alberta court would not have recognized a default judgment entered by a United States court under the circumstances presented in this case, a Texas court would not recognize the Alberta judgment based on the doctrine of reciprocity. Unfortunately, there was a dearth of Texas law on this question. In a well-reasoned and scholarly discussion of the issue, the district court concluded on the basis of the modern trend of the common law in the state courts that Texas would not apply the doctrine of reciprocity, a doctrine which has come under increasing criticism from courts and commentators. 491 F.Supp. at 413–416. It thus saw no bar to recognition of the Canadian judgment and

Law 96–452—October 14, 1980.

entered summary judgment for Royal Bank on June 2, 1980.[1]

Defendant Trentham Corporation appealed to this court, and after oral argument had been completed, brought to this court's attention a recent change in the applicable Texas state law. As luck would have it, the State of Texas adopted the Uniform Foreign Country Money-Judgment Recognition Act on June 17, 1981. 1981 Tex.Sess.Law. Serv., Ch. 808, §§ 1–11, at 3069 (Vernon) (to be codified as Tex.Civ.Stat.Ann. art. 2328b–6 §§ 1–10 (Vernon)). The Act as originally drafted does not employ the doctrine of reciprocity as a reason for non-recognition of a foreign judgment. However, the Texas Legislature specifically included the requirement of reciprocity in its version of the Act:

> SECTION 5. GROUNDS FOR NON-RECOGNITION. (b) A foreign country judgment need not be recognized if:
>
> . . . .
>
> (7) it is established that the foreign country in which the judgment was rendered does not recognize judgments rendered in this state that, but for the fact that they are rendered in Texas, conform to the definition of "foreign country judgment" in Section 2(2) of this Act.
>
> SECTION 2. DEFINITIONS. In this Act:
>
> . . . .
>
> (2) "Foreign country judgment" means a judgment of a foreign country granting or denying a sum of money, other than a judgment for taxes, a fine or other penalty, or a judgment for support in matrimonial or family matters.[2]

Trentham thus argues that the present law of Texas, as expressed in the Uniform Act, requires reversal since the requirement of reciprocity is not fulfilled.

Royal Bank argues in reply that the Uniform Act is irrelevant to the case by its own terms:

> Sec. 10. NONAPPLICABILITY. This Act does not apply to a judgment rendered before the effective date of this Act.
>
> Sec. 11. EMERGENCY. The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended, and that this Act take effect and be in force from and after its passage, and it is so enacted.

The Act was passed on June 17, 1981, two and one half years after the Alberta judgment was entered on October 11, 1978.

In *Vandenbark v. Owen-Illinois Glass Co.,* 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941), the Supreme Court addressed the question of what law is to be applied by an appellate court in a diversity case when the state's law changes after a federal district court renders its decision. The court held that "the duty rests upon the federal courts to apply state law under the Rules of Decision statute [28 U.S.C. § 1652] in accordance with the then controlling decision of the highest state court." *Id.* at 543, 61 S.Ct. at 350. The court cited a previous decision, *United States v. Schooner Peggy,* 1 Cranch 103, 2 L.Ed. 49 (1801), as describing the correct rule:

> It is, in general, true, that the province of an appellate court is only to enquire whether a judgment when rendered was erroneous or not. But if, subsequent to

---

1. Another district court in Texas reached similar conclusions concerning the doctrine of reciprocity. See *Hunt v. BP Exploration Company (Libya) Ltd.,* 492 F.Supp. 885 (N.D.Tex.1980).

2. Texas' amendment of the Uniform Act to include a reciprocity provision is especially ironic given that the Act was designed to be a modern, forward-looking statute which discarded what were considered to be outmoded and discredited doctrines. Indeed, one commenta-

tor has stated that "[t]he primary impact of the Uniform Act is to reject the holding of *Hilton v. Guyot* [, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895),] by announcing to the world that reciprocity is not a requirement in the United States." Ernster, *Recognition and Enforcement of Foreign Money-Judgments: A Clear Position for New Jersey,* 22 Rutgers L.Rev. 327, 330 (1968).

the judgment, and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied.

*Vandenbark, supra*, 311 U.S. at 541, 61 S.Ct. at 349, quoting *Schooner Peggy, supra*, at 110.

The present case raises the interesting question of how *Vandenbark* is to be understood when the intervening change of state law would not have been applied retroactively by the state courts themselves. There are two schools of thought on this issue. The "hard and fast" rule, as so named by the court which applied it in *Nelson v. Brunswick Corp.*, 503 F.2d 376 (9th Cir. 1974), uses the new state rule regardless of its non-retroactive application in the state courts. It is based on the proposition that "the *Vandenbark* decision does not on its face seem to contemplate an independent determination of whether the state will apply a change in its rules of decision retroactively in ascertaining the law of a state." *Id.* at 381–82 n. 12. Critics of the "hard and fast" rule point out that this interpretation undercuts *Vandenbark*'s own reliance on the Rules of Decision Act. If a federal court really is required to use a state's rules of decision, it should also use the state's rules as to whether a new doctrine is to be retroactively or prospectively applied. Moreover, the "hard and fast" rule seems inconsistent with general *Erie* principles since it creates a divergence between the substantive law applied by state courts and that applied by federal courts sitting in diversity.[3] Professor Moore thus argues that the correct rule is that "federal appellate courts, faced with a change in state law subsequent to the decision of the lower court, [should] determine the effect such change would be given under applicable state law doctrines. If the state courts would deny the subsequent change retroactive effect and leave the lower court's decision undisturbed, then federal courts should act similarly." 1A Moore's Federal Practice ¶ 0.307[3] at 3104–05 (2d Ed. 1976).[4]

Two decisions of this circuit have recently considered these issues, but found it unnecessary to decide between *Nelson*'s "hard and fast" rule and the more flexible *Erie*-based approach favored by Professor Moore, because the state rule in question would have been applied retroactively by the state courts in each case. *Samuels v. Doctors Hospital, Inc.*, 588 F.2d 485 (5th Cir. 1979); *Downs v. J. M. Huber Corp.*, 580 F.2d 794 (5th Cir. 1978).[5] We also find it unnecessary to decide between the two approaches in the circumstances of the present case. While it is true that the Act specifically states that it will not apply to judgments entered before its passage, we think that the Texas courts would nevertheless apply to the present case those provisions in the Act that incorporate the doctrine of reciprocity. The reason for this is both simple and pragmatic: As the district court noted in its opinion, there is a dearth of Texas case law on the doctrine of reciprocity. It is doubtful that the Texas courts, faced with what is really a case of first impression, would create a common law of recognition of foreign judgments for cases involving judgments rendered before June 17, 1981, and then apply different rules for later judgments. Instead, it is more likely that, given that the issue of

---

**3.** Even the court in *Nelson*, which adopted the "hard and fast" rule, admitted that "the rule has been criticized, . . . we think perhaps justly, because it can lead to a difference in the result obtained in a federal and state court." *Id.* Several other courts have pointed out the obvious inconsistency between the "hard and fast" rule and *Erie* principles: *E. g., Plyler v. Wheaton Van Lines*, 640 F.2d 1091 (9th Cir. 1981); *Samuels v. Doctors Hospital, Inc.*, 588 F.2d 485 (5th Cir. 1979); *Downs v. J. M. Huber Corp.*, 580 F.2d 794 (5th Cir. 1978).

**4.** One court has suggested that the "hard and fast" rule, if it applies at all, should be limited to state court decisions; as to statutory changes in the state's law which are presumptively prospective, a federal appellate court should apply the law as it existed before the enactment. *Universal Underwriters Insurance Co. v. Wagner*, 367 F.2d 866 (8th Cir. 1966).

**5.** *See also Hegger v. Green*, 646 F.2d 22, 26 n.6 (2d Cir. 1981) (decision of issue unnecessary since New York courts would have applied the law in question retroactively.).

reciprocity had never been squarely addressed in recent years by the Texas judiciary, a Texas court in our position would look to the new statute in the interests of uniformity. It would do so not because it was compelled by the statutory language; rather, it would do so because no purpose would be served in carving out a new and different rule for an arbitrary set of cases. In our opinion, the new Act has changed the legal climate in Texas with respect to this question, and thus we think that the provisions of the Act would be applied by the Texas state courts.

Royal Bank argues that even if this is so, the Act does not preclude summary judgment against Trentham. It points out that while section 5(a) of the Act lists grounds under which a foreign judgment is "not conclusive," the reciprocity provision falls under section 5(b), which lists grounds under which a foreign judgment "need not be recognized."[6] Royal Bank thus argues that the decision whether or not to grant recognition under section 5(b) is a matter of discretion for the trial judge. This interpretation of the difference between Sections 5(a) and 5(b) is consistent with the language of the Act and is the view expressed by various commentators. *See* Kulzer, *Recognition of Foreign Country Judgments in New York: The Uniform Foreign Money-Judgments Recognition Act*, 18 Buffalo L.Rev. 1, 25 (1969) (explaining that criteria under 5(a) go to the validity of the judgment itself, whereas criteria under 5(b) are concerned with the interests of the parties and the foreign state.); Ernster, *Recognition and Enforcement of Foreign Money-Judgments: A Clear Position for New Jersey*, 22 Rutgers L.Rev. 327, 330 (1968); Note, *The Uniform Money-Judgments Recognition Act*, 64 Mich.L.Rev. 308, 311 (1965).

Even though section 5(b)(7) might give the trial court discretion to recognize the judgment despite nonreciprocity by the foreign forum, in the present case the trial court granted recognition because it thought reciprocity was *irrelevant*. Thus we cannot affirm the trial court's judgment since it was based on a view of the law which, while correct when the judgment was rendered, has ceased to be so. We therefore remand to the district court for a determination of whether the judgment should be recognized under the new Act. Unfortunately, the Act itself does not make clear under what conditions a court's discretion to permit recognition of a judgment under section 5(b) should be exercised, *see* Note, *supra*, 64 Mich.L.Rev. at 311–314, and we are unaided by any state court constructions of the meaning of the Act in Texas. We remind the trial court that although it possesses some discretion, the clear message

---

**6.** Section 5 of the Act lists ten separate grounds for nonrecognition, three under § 5(a) and seven under § 5(b):

Sec. 5. GROUNDS FOR NONRECOGNITION

(a) A foreign country judgment is not conclusive if:

(1) the judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law;

(2) the foreign country court did not have personal jurisdiction over the defendant; or

(3) the foreign country court did not have jurisdiction over the subject matter.

(b) A foreign country judgment need not be recognized if:

(1) the defendant in the proceedings in the foreign country court did not receive notice of the proceedings in sufficient time to enable him to defend;

(2) the judgment was obtained by fraud;

(3) the cause of action on which the judgment is based is repugnant to the public policy of this state;

(4) the judgment conflicts with another final and conclusive judgment;

(5) the proceeding in the foreign country court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court;

(6) in the case of jurisdiction based only on personal service, the foreign country court was a seriously inconvenient forum for the trial of the action; or

(7) it is established that the foreign country in which the judgment was rendered does not recognize judgments rendered in this state that, but for the fact that they are rendered in Texas, conform to the definition of "foreign country judgment" in Section 2(2) of this Act.

1981 Tex.Sess. Law Serv., ch. 808, § 5, at 3069 (Vernon).

of the Texas Legislature's amendment to the Uniform Act is that foreign judgments which would not be reciprocally recognized if made in Texas are not favored. Given the views of the Texas Legislature and the complete absence of criteria for guidance fashioned by the state courts, the trial court should proceed cautiously in the use of its discretion. Nevertheless, we think that the state courts would permit some inquiry into equitable considerations weighing in favor of recognizing the judgment. In particular, we note that Royal Bank could scarcely have foreseen that the Texas Legislature would adopt a variant from the Uniform Act recognizing the principle of reciprocity. In view of the peculiar facts of this case, therefore, the trial court should determine whether Royal Bank would now be prevented from pursuing a new action in the Texas courts because of the applicable statute of limitations [7] or for any other reason. If a trial on the merits cannot be had in Texas, this may weigh in favor of enforcing the present Canadian judgment.

We therefore vacate the judgment of the district court and remand for further proceedings consistent with the above. In the interests of speedy resolution of this protracted litigation, we direct that the trial court determine whether it will recognize the judgment or not within sixty days from the date of issuance of the mandate. In so doing, the trial court should make whatever findings of fact and conclusions of law are necessary to arrive at its decision. Additional briefing by the parties is strongly encouraged. If the court decides that the Alberta decree should be enforced, it is directed to reinstate its own judgment. Whatever the decision of the trial court, it will not be necessary for the parties to file a new notice of appeal in order to obtain appellate review of that decision. The parties need only file certified copies of the district court's findings plus any supplementary briefs and materials. The matter will then be referred to this panel. *See Chaney v. Schweiker*, 659 F.2d 676, 679 n. 5 (5th Cir. 1981); *United States v. Gaston*, 608 F.2d 607, 614 n.3 (5th Cir. 1979).

Each party shall bear its own costs.

VACATED and REMANDED.

---

**7.** Even assuming, as the district court did, that Alberta law would apply to the validity of the guaranty contract, it is likely that the four year Texas statute of limitations for actions on a debt would apply if Royal Bank brought a new suit on the guaranty in Texas. Tex.Rev.Civ. Stat.Ann. art. 5527 (Vernon); *see Long Island Trust Co. v. Dicker*, 659 F.2d 641, 644 n. 6 (5th Cir. 1981); *Ellis v. Great Southwestern Corp.*, 646 F.2d 1099, 1111 (5th Cir. 1981).

\* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.