Geraldine TORRE and Paul Torre, Plaintiffs,

v.

J.C. PENNEY CO., INC., and Liberty Mutual Insurance Co., Inc., Defendant.

No. CV–N–94–768–ECR.

United States District Court, D. Nevada.

Feb. 16, 1996.

1030

Marialice K. Galt, David Allen & Associates, Reno, NV, for plaintiffs.

Pat Lundvall of McDonald, Carano, Wilson, McCune, Bergin, Frankovich & Hicks, Reno, NV, for J.C. Penney Co.

Kimberley Fenner of Piscevich & Fenner, Reno, NV, for Liberty Mutual Insurance.

*ORDER*

EDWARD C. REED, Jr., District Judge.

Geraldine Torre worked as a clerk for the J.C. Penney Co. until she was fired in late 1991. She claims that Penney fired her in retaliation for her filing of a worker's compensation claim in 1990, and that Liberty Mutual, Penney's worker's compensation insurance carrier, handled her claim in various ways forbidden by the state compensation statutes. Her husband, Paul Torre, claims that he suffered a loss of his wife's consortium as a result of these events.

The Torres filed suit in the Nevada state court in October 1994, and, as all parties are diverse, the defendants removed the case to this court. The complaint contains three claims for relief, all sounding in tort: one against Penney for discharge in violation of "public policy"; one against Liberty Mutual for bad faith handling of the worker's compensation claim; and one against both defendants for loss of consortium. Penney has moved for summary judgment (Doc. # 15), the Torres have opposed (Doc. # 23), and Penney has replied. (Doc. # 25.) Liberty Mutual, too, has moved for summary judgment (Doc. # 17), the Torres have opposed (Doc. # 24), and Liberty Mutual has replied. (Doc. # 26.)

I. Discharge in violation of "public policy"

Employment in Nevada is presumptively "at will," but there are certain considerations which may not form the basis for a decision to fire an at will employee. One of these is the employee's filing of a worker's compensation claim, and an employee fired in retaliation for filing a such a claim may bring an action in tort for discharge in violation of "public policy." *Hansen v. Harrah's,* 100 Nev. 60, 675 P.2d 394, 397 (1984); *see also D'Angelo v. Gardner,* 107 Nev. 704, 819 P.2d 206, 212 (1991).

Under state law, however, there is a two-year limitation period on such a claim, *Palmer v. State,* 106 Nev. 151, 787 P.2d 803, 804 (1990), and a federal court sitting in diversity applies state's statute of limitation.

*Nevada Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1306 (9th Cir.1992); *see also Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 966 (9th Cir.1993). In this case, Torre herself states that she was fired by Penney in August 1991, Doc. # 1 Exh. B ¶ 22, a statement which Penney incorporates, for present purposes only, *see* Doc. # 15 at 3, into its statement of undisputed facts, and which Penney presents no evidence to contradict. She filed suit three years later, and thus more than a year after the statute of limitations had run. (Her affidavit, *see* Doc. # 23 Exh. A, hints at October 1991 as the date she was fired, but that makes no difference, as the statute of limitations would still have run.)

## II. "Bad faith" handling of Torre's worker's compensation claim

Penney is self-insured under the state's industrial insurance system, and Liberty Mutual is its third-party administrator. The state legislature recently made significant changes to the state's worker's compensation laws. One of those changes is embodied in N.R.S. § 616D.030, which took effect on July 1, 1995. It provides that "[n]o cause of action may be brought or maintained against an insurer or a third-party administrator who violates any provision of [Nevada's industrial insurance statutes]," and that the administrative fines provided for in the statutes shall be the "exclusive remedies" for any such violation.

The statute thus bars the tort claim against Liberty Mutual. Torre argues that the statute does not apply here, because it is not, by its terms, retroactive, and she filed suit before it was enacted. That is incorrect.

### A. *What law governs*

1. *The view that federal courts apply new state law to pending cases, whether or not the state itself would give retroactive effect to the new state law*

Some decisions suggest that a federal court, sitting in diversity, must apply a new state statute as it exists at the time of the suit—i.e., must always apply a new state statute to cases pending in the federal court—without regard to whether the highest state court would itself apply the statute to pending cases. That view was suggested by the Court's decision in *Vandenbark v. Owens–Illinois Glass Co.*, 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941), and a panel of the Ninth Circuit once endorsed the approach (in a case in which it made no difference, because the state courts, too, would have applied the new rule retroactively). *See Nelson v. Brunswick Corp.*, 503 F.2d 376, 381 n. 12 (9th Cir.1974) (noting that "the *Vandenbark* decision does not on its face seem to contemplate an independent determination of whether the state will apply a change in its rules of decision retroactively in ascertaining the law of a state," and therefore applying it as a "hard-and-fast" rule, but noting that criticism of the decision was probably justified and that a more flexible approach would make no difference in the case at bar because the state courts would apply the state decision at issue retroactively anyway). If that is so, we could simply apply N.R.S. § 616D.030 as it exists, and dismiss Torre's claim against Liberty Mutual on that basis.

2. *The view that federal courts in diversity follow state law in deciding whether to apply a new state rule to pending cases*

The better view, however, is that a federal court sitting in a pending diversity case, and faced with a new state rule of law, which has arisen while the case is pending, should apply the new rule to the pending case only if the state courts would do so. As the Fifth Circuit has explained, the question is

> how *Vandenbark* is to be understood when the intervening change of state law would not have been applied retroactively by the state courts themselves. There are two schools of thought on this issue. The 'hard and fast' rule ... uses the new state rule regardless of its non-retroactive application in the state courts. It is based on the proposition that 'the *Vandenbark* decision does not on its face seem to contemplate an independent determination of whether the state will apply a change in its rules of decision retroactively in ascertaining the law of a state.' Critics of the 'hard and fast' rule point out that this interpretation

undercuts *Vandenbark* 's own reliance on the Rules of Decision Act. If a federal court really is required to use a state's rules of decision, it should also use the state's rules as to whether a new doctrine is to be retroactively of prospectively applied. Moreover, the 'hard and fast' rule seems inconsistent with general *Erie* principles since it creates a divergence between the substantive law applied by state courts and that applied by federal courts sitting in diversity.

*Royal Bank of Canada v. Trentham Corp.*, 665 F.2d 515, 517 (5th Cir.Unit A 1981) (citations omitted) (footnote omitted).

This may explain then-Circuit Judge Kennedy's statement in *Plyler v. Wheaton Van Lines*, 640 F.2d 1091, 1093 (9th Cir.1981), that "in a diversity case, the question of retroactivity of new state law may be a federal rule, not a state one," though he expressly declined to decide whether retroactivity in this situation is governed by federal or state law.

Commentators take the same view:

[i]f during the pendency of a case in the federal courts state law changes ... the federal courts must take this into account and reverse or revise their determination of state law accordingly. When, however, a state court announces that a change in state law is to have prospective effect only, the logic of *Erie* and *Vandenbark* seems to dictate that a federal court abide by that determination of state policy and decide a pending case according to the rule of law formerly in effect.

19 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4507, at 106–07 (1982) (footnotes omitted). *See also* 1A Pt. 2 James Wm. Moore & Brett A. Ringle, *Moore's Federal Practice* ¶ 0.307[3], at 3074 (2d ed. 1995) ("a change in state law during the pendency of the district court trial requires recognition by the district court of the change"). Most important, of course, is that this was how Justice Harlan thought the problem ought to be resolved. *See United States v. Estate of Donnelly*, 397 U.S. 286, 296 n. *, 90 S.Ct. 1033, 1039 n. *, 25 L.Ed.2d 312 (1970) ("a federal court would, in fact, be obligated to abide by the applicable state rule should a retroactivity question arise in a diversity case") (Harlan, J., concurring).

B. *Whether the Nevada Supreme Court would apply N.R.S. § 616D.030 to pending cases*

■ Section 616D.030, to reiterate, was enacted while this case was pending. The 'hard and fast' rule suggested in *Nelson* would require us, as noted above, simply to apply the new statute to this case, without asking whether the Nevada courts would do so. The result is the same, however, if we do ask what a Nevada court would do in this case, because it seems clear that the Nevada courts themselves would apply the statute to pending cases.

Torre argues that the statute is not retroactive because, as a general matter, statutes are presumptively prospective only, *see* *McKellar v. McKellar*, 110 Nev. 200, 871 P.2d 296, 298 (1994) ("[t]here is a general presumption in favor of prospective application of statutes unless the legislature clearly manifests a contrary intent or unless the intent of the legislature cannot otherwise be satisfied"), and nothing in the language of this particular statute suggests otherwise.

■ It is true, as Torre points out, that, generally speaking, statutes apply only prospectively. But that presumption holds only when the statute goes to substance—to vested rights or to penalties. It does not hold when the new statute affects only remedies. *Truckee River Gen. Elec. Co. v. Durham*, 38 Nev. 311, 316, 149 P. 61 (1915) ("the general rule against retrospective application of a statute does not apply to statutes relating merely to remedies and modes of procedure"). And this statute affects only the remedy available against a third-party administrator: instead of a common-law tort remedy, an aggrieved party has an administrative remedy. The Nevada Supreme Court, so far as we can tell, has addressed the application of this type of remedial statute to pending cases only once, holding that " 'if a statute giving a special remedy is repealed without a savings clause in favor of pending suits, all suits must stop where the repeal finds them.' " *French v. French*, 91

Nev. 248, 533 P.2d 1357, 1359 (1975), *overruled in part by In re Estate of Miller,* 111 Nev. 1, 888 P.2d 433 (1995), (*quoting South Carolina v. Gaillard,* 101 U.S. 433, 438, 25 L.Ed. 937 (1879)). (*French* involved the repeal of a special remedy, while this case involves the repeal of common-law remedies and their replacement by an statutory remedy—but we think that makes no difference.)

 Nevada's approach thus mirrors the general approach. In general, the presumption against application of a new statute to pending cases does not apply to statutes affecting remedies or procedure. *See In re Arrowhead Estates Dev. Co (Arrowhead Estates Dev. Co. v. United States Trustee),* 42 F.3d 1306, 1311 (9th Cir.1995) ("[w]hile there is often a presumption against retroactive application of new legislation to pending cases, this presumption generally does not apply to rules conferring or withdrawing jurisdiction"). (The federal cases in this area deal mostly with repeals of jurisdiction, but the same rule applies to statutes affecting remedies. *See Friel v. Cessna Aircraft Co.,* 751 F.2d 1037, 1039 (9th Cir.1985) ("when a statute is addressed to remedies or procedures and does not otherwise alter substantive rights, it will be applied to pending cases") (footnote omitted).)

The federal cases make clear that a statute of the sort at issue here would be applied to pending cases. The rule was stated best in *Bruner v. United States,* 343 U.S. 112, 116–17, 72 S.Ct. 581, 584–85, 96 L.Ed. 786 (1952): "[t]his rule—that, when a law conferring jurisdiction is repealed without any reservation as to pending cases, all cases fall with the law—has been adhered to consistently by this Court." *See also Landgraf v. USI Film Prods.,* —— U.S. ——, ——, 114 S.Ct. 1483, 1501, 128 L.Ed.2d 229 (1994) ("[w]e have regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed"); *The Assessors v. Osbornes,* 76 U.S. (9 Wall.) 567, 19 L.Ed. 748 (1869) (where jurisdiction is conferred by an act of Congress, "when the act of Congress was repealed the power to exercise such jurisdiction was withdrawn, and inasmuch as the repealing act contained no saving clause, all pending actions fell").

### III. Loss of consortium

 Paul Torre's loss of consortium is derivative of his wife's claims. *See Leslie v. J.A. Tiberti Constr. Co.,* 99 Nev. 494, 664 P.2d 963, 966 (1983). If they fail, so does his claim.

### IV. Summary

Geraldine Torre's claim against Penney is barred by the statute of limitations. Her claim against Liberty Mutual is barred by N.R.S. § 616D.030, which we believe would clearly be applied by Nevada courts to pending suits. Because her claims fail, so does Paul Torre's claim for loss of consortium.

**IT IS THEREFORE HEREBY ORDERED** that J.C. Penney Co.'s **motion (Doc. # 15)** for summary judgment is **GRANTED.**

**IT IS FURTHER ORDERED** that Liberty Mutual Insurance Co.'s **motion (Doc. # 17)** for summary judgment is **GRANTED.**

**IT IS FURTHER ORDERED** that the clerk shall enter judgment accordingly.