**Johann KAHRS, Jr., Plaintiff,**

v.

**RIO VERDE ENERGY CORP., INC.,
Defendant and Third-Party Plaintiff,**

v.

**The SEAHAM COMPANY,
Third-Party Defendant.**

No. C–1–83–1582.

United States District Court,
S.D. Ohio, W.D.

Jan. 11, 1985.

---

William P. Schroeder and Robert S. Hiller, Cincinnati, Ohio, for plaintiff.

John E. Schlosser, Cincinnati, Ohio, for defendant.

## FINDINGS OF FACT, OPINION, AND CONCLUSIONS OF LAW

CARL B. RUBIN, Chief Judge.

Plaintiff seeks enforcement of an Order issued in the United Kingdom by the High Court of Justice, Queen's Bench Division, Commercial Court District Registry. The parties are in agreement that the case can be decided on the basis of briefs and stipu-

---

lated facts. As a preliminary matter, however, several motions must first be ruled upon. The first is that of third-party plaintiff, Rio Verde Energy Corporation ("Rio Verde"), seeking a Default Judgment against third party defendant, The Seaham Company. (Doc. no. 10). As The Seaham Company has failed to defend the Third-Party Complaint against it, the Clerk of Courts is **ORDERED** to enter a Default Judgment in favor of Rio Verde pursuant to Fed.R.Civ.P. 55(b)(1).

The next motions were also made by Rio Verde and go to the scope of the controversy. (Doc. nos. 16, 19). For the reasons stated below, both motions are **DENIED.**

## I. Findings of Fact

The stipulated facts are as follows:

A.   Plaintiff, Johann Kahrs, Jr., is a citizen and resident of West Germany.

B.   Defendant, Rio Verde, is a Delaware corporation authorized to do business in the State of Ohio with its principal place of business in Ohio.

C.   Joint Exhibit A is a true copy of an Order entered in London, England, in the High Court of Justice, Queen's Bench Division, Commercial Court District Registry on October 22, 1982. It reads as follows:

Upon hearing counsel for the parties and upon reading the affidavit of Miss Ottilie Sefton filed herein, it is ordered (1) that the First Defendants do within 14 days pay to the credit of a joint account in the name of Plaintiff and the First Defendants at Stadtsparkasse Stade, 2160 Stade, Germany, the sum of DM. 162,750.00; (2) costs of this application be the Plaintiff's (disallowing costs of preparation and service of points of claim); (3) leave to appeal refused.

D.   At the prevailing rate of monetary exchange on October 22, 1982, DM 162,750.00 (deutsche marks) equaled $64,465.27 in United States currency.

E.   Rio Verde has paid no money to any person or entity pursuant to the High Court Order.

F.   The High Court had personal jurisdiction over Rio Verde.

G.   Stadtsparkasse Stade is a West German bank which is not a party to this action.

## II. Opinion

In order to properly formulate the issue involved in this case, Rio Verde's Motion to Record Rulings (doc. no. 16) must be addressed. Through its Motion, Rio Verde seeks confirmation of a verbal ruling on the "finality" of the High Court's Order. The only thing this Court decided in any ruling on finality was that it would not relitigate the underlying dispute decided by the High Court. Rio Verde was not foreclosed from attacking the "finality" of the Order, whatever that might mean. Indeed, Rio Verde did not hesitate to attack the finality of the Order in its Brief and Proposed Findings of Fact and Conclusions of Law. Those arguments have been duly noted and addressed below. The fact remains, however, that Rio Verde stipulated to the authenticity of the Order and nowhere disputes the extent of its *res judicata* effect. The only remaining grounds for dispute, therefore, is whether the Order qualifies for full faith and credit under the laws of this country. The Court holds that it does.

The jurisdiction of this Court is founded on the grant of alienage jurisdiction in 28 U.S.C. § 1332. In such cases, the forum state's full faith and credit principles provide the rule of decision. *Royal Bank of Canada v. Trentham Corp.*, 665 F.2d 515 (5th Cir.1981); *British Midland Airways, Ltd. v. International Travel, Inc.*, 497 F.2d 869 (9th Cir.1974). Ohio has one case on the enforcement of orders rendered in foreign countries. In declining to enforce a defective Mexican divorce decree, the Ohio Court of Appeals for Holmes County noted that states may recognize such decrees when they are found to be valid under the law of the foreign state and such recognition is harmonious with the public policy of Ohio. *Yoder v. Yoder*, 24 Ohio App.2d 71, 72, 263 N.E.2d 913 (1970).

The Court labeled such recognition "comity." *Id.*

■ Long ago, the United States Supreme Court established the criteria for judging a foreign judgment worthy of enforcement.

> When an action is brought in a court of this country, by a citizen of a foreign country against one of our own citizens, to recover a sum of money adjudged by a court of that country to be due from the defendant to the plaintiff, and the foreign judgment appears to have been rendered by a competent court, having jurisdiction of the cause and of the parties, and upon due allegations and proofs, and opportunity to defend against them, and its proceedings are according to the course of a civilized jurisprudence, and are stated in a clear and formal record, the judgment is *prima facie* evidence, at least, of the truth of the matter adjudged; and it should be held conclusive upon the merits tried in the foreign court, unless some special ground is shown for impeaching the judgment, as by showing that it was affected by fraud or prejudice, or that, by the principles of international law, and by the comity of our own country, it should not be given full faith and effect.

*Hilton v. Guyot,* 159 U.S. 113, 205–06, 16 S.Ct. 139, 159–60, 40 L.Ed. 95 (1895). The Uniform Foreign Money-Judgments Recognition Act, enacted in 12 states and reflective of the law in a majority, repeats the grounds for nonrecognition of foreign judgments listed in *Hilton,* and adds lack of notice, public policy, settlement, conflicting judgments, and inconvenient forum to the list. 13 U.L.A. § 4 (1984). The High Court's Order in the instant case satisfies all the above requirements, and Rio Verde does not assert to the contrary. Instead, it attacks the Order as being an indefinite, conditional, mandatory injunction unworthy of enforcement.

Rio Verde criticizes the conclusiveness of the Order because it does not resolve all claims against all parties under Fed.R. Civ.P. 54(b), and it orders payment to a third-party bank. The Order, when read by itself, is a plain and simple order to Rio Verde to pay money into a joint account for Kahrs and Rio Verde in Stadtsparkasse Stade. Rio Verde offers various speculations about the existence of a second defendant and about the significance of payment into a third-party bank, but it offers no hard evidence as to the role of either. The only evidence in this case, aside from the Order and stipulations, is a copy of the contract that served as the basis for Kahrs's claim in the High Court. Rio Verde contests the admissibility of this contract on the grounds that it is beyond the scope of the full faith and credit issue. (Doc. no. 19). This Court finds to the contrary and holds that the contract is highly relevant to the issue at hand. Indeed, it resolves the very speculations raised by Rio Verde.

The contract evidences a sale by Kahrs to Rio Verde of a ship for the purchase price of DM 1,627,500. A 10% security deposit was to be paid to a joint account at the German bank, and the full purchase price was to be paid into Kahrs's account. After hearing evidence and argument of counsel, the High Court ordered payment of the security deposit in accordance with the contract. Why the High Court ordered payment rather than rendering judgment and why it did not mention the second defendants is of no moment to this Court. Rio Verde has presented no evidence as to either question. Nor has it explained why it has not complied with the Order. What is certain, however, is that the High Court resolved the dispute between Kahrs and Rio Verde in favor of Kahrs in the precise amount called for under the contract. Speculation and *innuendo* are insufficient grounds for discarding the principles of comity supporting enforcement of the admittedly valid and fundamentally sound High Court resolution of the dispute.

Rio Verde's final attack on the Order is based on a 1902 Ohio Common Pleas Court opinion that stands for the proposition that foreign injunctions are unenforceable in Ohio. *Philadelphia Baseball Club, Ltd. v.*

*Lajoie,* 13 Ohio Dec. 504 (Cuyahoga C.P. 1902). The authoritative effect of this broad proposition is much in doubt. Neither *Lajoie* nor its rule of law have been followed by any other Ohio court, and it runs contrary to modern practice. Today, money decrees, such as the High Court's Order, are executed in virtually the same fashion as are judgments for damages. D. Dobbs, *Remedies* § 2.8 (1973). Ohio's statute on recognition of sister-state judgments applies to "any judgment, decree, or order." Ohio Rev.Code Ann. § 2329.021 (Page 1983). Ohio Courts regularly enforce sister-states' divorce decrees. *See e.g., Williams v. Williams,* 44 Ohio St.2d 28, 336 N.E.2d 426 (1975); *Price v. Price,* 4 Ohio App.3d 217, 447 N.E.2d 769 (1982). This Court, therefore, does not find the *Lajoie* case an obstacle to honoring the High Court's Order.

In short, Rio Verde has failed to put forth a persuasive reason for not recognizing a concededly valid High Court Order. Principles of comity decidedly outweigh the speculation and *innuendo* offered by Rio Verde.

### III. Conclusions of Law

A. This Court has jurisdiction under 28 U.S.C. § 1332.

B. The Order of the High Court of Justice, Queen's Bench Division, Commercial Court District Registry is a valid resolution of the dispute between Kahrs and Rio Verde and is deserving of full faith and credit in this Court.

IT IS SO ORDERED.