J. M. DICKSON ET AL V. NAVARRO COUNTY LEVEE IMPROVEMENT DISTRICT NO. 3, ET AL.

No. 7614. Decided April 24, 1940.
Rehearing overruled May 29, 1940.
(139 S. W., 2d Series, 257.)

*J. L. Gammon, A. R. Stout* and *G. Goodwin Sweatt,* all of Waxahachie, for plaintiffs in error.

The judgment in favor of relator was abated by the repeal of the statute under which the suit was brought. Paulsen v. Reinecke, 181 La. 917, 160 So. 629, 97 A. L. R. 1184; Langever v. Miller, 124 Texas 80, 76 S. W. (2d) 1025; Stephens County v. Hefner, 118 Texas 397, 16 S. W. (2d) 804.

*Felix Atwood* and *J. P. Moseley,* both of Ennis, for defendants in error.

It was not error for the trial court to enter judgment for relator and the levee district because at the time of the rendition of the judgment the section of the statute had not been repealed. Baines v. Jemison, 86 Texas 118, 23 S. W. 639; City of Fort Worth v. Morrow, 284 S. W. 275; Mellinger v. City of Houston, 68 Texas 37, 3 S. W. 249.

MR. JUDGE GERMAN, of the Commission of Appeals, delivered the opinion for the Court.

In September, 1918, Navarro County Levee Improvement District No. 3, including certain territory situated in Navarro County, was created under the provisions of Chapters 25 and 44 of the Fourth Called Session of the 35th Legislature. About the same time, Ellis County Levee Improvement District No. 10, including certain territory in Ellis County, was created under the same authority. As we understand, these two districts adjoin and in reality constitute but one district.

In January, 1919, in pursuance of the provisions of the laws above mentioned, the district caused to be issued certain bonds aggregating $21,000. For the purpose of this decision, it is assumed that everything in connection with the creation of the district, the issuance of the bonds, and the assessment and levy of taxes upon lands of the defendants hereinafter mentioned to pay interest upon the bonds and create a sinking fund, was regularly and properly done.

The law under which said bonds were issued provided as follows with reference to the collection of delinquent taxes:

"Tax collectors of levee improvement districts shall perform all duties and exercise all powers in respect to delinquent taxes due levee improvement districts as may be provided by law for the collection of delinquent State and county taxes, and the collection of such delinquent levee improvement district taxes and sales of property therefor shall be governed by the laws applying to the collection of delinquent State and county taxes. Taxes levied under this Act shall be a lien upon the property against which they are assessed, and shall be payable and shall mature and become delinquent as may be provided by law for State and county taxes, and upon failure to pay such taxes when due the same penalty shall accrue and be collected as may be provided by law in case of non-payment of State and county taxes."

In 1925, the Legislature passed an elaborate Act concerning levee improvement districts, being Chapter 21, General Laws 39th Legislature, which apparently superseded all other laws upon the subject. This Act, with perhaps some additions, appears as Chapter Six, of Title 128, of the Revised Statutes of 1925, and includes Articles 7972 to 8017, inclusive, as well as numerous other articles. Ample provision is made in Article 8016 for collection of delinquent taxes. However, Article 8017 set up a supplemental and detailed method of collecting taxes, and subdivision (i) of said articles was as follows:

"Whenever the board of supervisors of any levee improve-

ment district shall fail to commence suits within sixty days after taxes have become delinquent, the holder or holders of any bonds issued by such levee improvement district shall have the right to employ counsel to bring such suit in the name of the levee improvement district upon the relation of such holder or bondholders; and such suits may be proceeded with in the same manner as hereinabove prescribed, and shall in all respects be governed by the provisions of this section."

Taxes for the years 1933 and 1934 upon lands of J. M. Dickson, W. D. Dickson and Porter Horton became delinquent. E. K. Atwood became holder of some of the bonds issued in 1919. On March 16, 1937, under and by virtue of subdivision (i) of Article 8017, set out above, Atwood, by his attorney, instituted suit in the District Court of Navarro County against J. M. Dickson, W. D. Dickson and Porter Horton as defendants. The formal part of the petition is as follows: "Now comes your petitioner, Navarro County Levee Improvement District No. 3, hereinafter called 'Plaintiff District,' upon the relation of E. K. Atwood, acting herein as hereafter will more fully appear.

Briefly stated, the purpose of the suit was to recover taxes assessed against lands of defendants within said levee district for the year 1933 and 1934, and for foreclosure of lien upon said lands.

On April 5, 1927, defendants in said cause filed what they designated an answer and plea in abatement. The plea in abatement was to the effect that the suit was brought upon the relation of E. K. Atwood, which was contrary to law, in that the supervisors of said district were the proper parties to bring such a suit. It was alleged that Whit Eaton, George Norris, and J. T. Beall had been duly appointed supervisors, and had qualified as such. By way of answer they plead that the taxes for the years 1933 and 1934 were barred by limitation. On the same day Whit Eaton, George Morris and J. T. Beall, alleging themselves to be the duly appointed and qualified supervisors for said levee district, filed in said cause a petition of intervention. In said petition they prayed that E. K. Atwood be "dismissed as bringing this suit in behalf of said Navarro County Levee Improvement District No. 3," and that the attorney for said E. K. Atwood be dismissed as attorney for plaintiff, and that interveners' attorney be sustituted therein.

On June 25, 1937, judgment by default was pronounced in the case, it being recited in the judgment that "Navarro County Levee Improvement District No. 3 of Navarro County, Texas, on the relation of E. K. Atwood" was plaintiff. After reciting

that the pleas in abatement by defendants and interveners were overruled, Judgment was awarded in favor of the district against defendants J. M. Dickson, W. D. Dickson and Porter Horton for the taxes for the years 1933 and 1934, with foreclosure of liens upon the lands of defendants.

On the next day, June 26, 1937, the defendants, as well as the supervisors of the district as interveners, filed motions for new trial. These motions were afterwards amended. Among the grounds set up for vacating the judgment, was one questioning the right of E. K. Atwood as relator to maintain the suit. On July 5, 1937, these motions were overruled, and at that time the judge of the court formally signed the judgment, in which it was recited that same was pronounced by the court on June 26, 1937. Notice of appeal was given by both the defendants and intervenors, and the case was appealed to the Court of Civil Appeals.

The 45th Legislature, at its First Called Session, on June 28, 1937, repealed subdivision (i) of Article 8017 of the Revised Statutes of 1925, under which the cause was instituted by Atwood as relator. This Act contained no saving clause. The emergency clause of the Act was as follows:

"The fact that many racketeers and bond scalpers have used the existing law as an instrument of oppression in order to obtain the land of many landowners in this State located in Levee Districts and as a result many citizens of Texas have lost their land and become homeless, and the further fact of the nearness of the close of this present Legislature create an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House be suspended and the Rule is hereby suspended, and that this Act take effect immediately from and after its passage, and it is so enacted."

This Act became effective September 28, 1937, while the cause was pending in the Court of Civil Appeals. Afterwards, the Court of Civil Appeals affirmed the judgment of the district court. 124 S. W. (2d) 943.

■ We have reached the conclusion that the effect of the Act of September 28, 1937, was to work an abatement of this suit, and this makes it unnecessary to discuss other questions.

■■ It is almost universally recognized that if a statute giving a special remedy is repealed, without a saving clause in favor of pending suits, all suits must stop where the repeal finds them; and, if final relief has not been granted before the repeal

goes into effect, it cannot be granted thereafter. A like general rule is that if a right to recover depends entirely upon a statute, its repeal deprives the court of jurisdiction over the subject matter. Phil H. Pierce Co. v. Watkins, 114 Texas 153, 263 S. W. 905; Galveston H. & H. Ry. Co. v. Anderson, 229 S. W. 998 (Writ ref.), and authorities there cited; Goodrich v. Wallis, 143 S. W. 285; State ex rel. Shaw v. Southern Anthracite Coal Co., 131 Ark. 593, 198 S. W. 126; State of South Carolina v. Gaillard, 101 U. S. 433, 25 Law Ed. 937.

■ These rules are controlling here. Subdivision (i) of the Act of 1925 manifestly conferred only a special remedy or privilege upon holders of bonds of a levee improvement district. While delinquent taxes were primarily due the district as such, and their collection rested with the district and its officials alone, said provision of the law conferred upon a bondholder the right to make a district a party to a suit to enforce collection of delinquent taxes. In other words, the law in effect constituted a bondholder a statutory relator, for the purpose of instituting and prosecuting suits in the name of the district, when the district, through its officials, had failed to do so. The bonds involved were issued in 1919, long before subdivision (i) of the Act of 1925 was enacted. The law at that time, as well as the Act of 1925, gave full and ample power to the district to collect delinquent taxes. The purchaser of bonds acquired such rights as the law existing in 1919 afforded. After the repeal of subdivision (i) they still retained such rights as they acquired by purchase and such rights as were afforded them under the general rules of equity. The repeal took away no right acquired by contract, but only destroyed the special remedial privilege afforded by subdivision (i). As was aptly said in State of South Carolina v. Gaillard, supra: "It is enough if the contract is 'Left with the same force and effect, including the substantial means of enforcement, which existed when it was made. The guaranty of the Constitution gives it protection to that extent.'"

It is our conclusion that the suit, having been brought by a relator under special statutory authority, wholly collapsed when the statute authorizing its prosecution by the relator was repealed. We have the anomalous situation presented here of the defendant in error being designated "Navarro County Levee Improvement District No. 3, by E. K. Atwood relator," when E. K. Atwood no longer has a legal right to represent said district, or prosecute a suit in its name. But the whole burden of argument seems to be that E. K. Atwood, individually, or

as a bondholder, is being robbed of some right. As above shown, the right sought to be upheld by him was one specially conferred by statute, and in no manner arose out of his contract of purchase; consequently, same was unquestionably taken away when the statute was repealed.

■ But it is argued that the judgment is in favor of the district, and as defendants have not shown a meritorious defense to the action, they are in no position to complain. The answer is that there has never been a final judgment, and as the party who, by reason of the statute, stood for the district when the suit was instituted, has been disabled from representing the district in the further prosecution of the suit, the district itself is no longer a party to the suit. The district in its own right, through its statutory supervisors, is not seeking to uphold the judgment, but in reality is insisting on it being held for naught. The supervisors were allowed to intervene, and filed motion for new trial. They have also filed application here, adopting in full the application filed by plaintiffs in error.

By way of illustration, we would call particular attention to the case of State, ex rel. Shaw, v. Southern Anthracite Coal Mininig Co., supra, by the Supreme Court of Arkansas, which, in principle, appears to be almost precisely in point. In that case a suit was instituted in the name of the State, on the relation of the State Mining Inspector. At the time of its institution the statute authorized same to be brought by the State Mining Inspector as relator. After the case was filed in the Supreme Court the Legislature passed an Act repealing the former law, and making provisions for enforcing the mining regulations by summary proceedings. The court dismissed the action saying: "Since the legislature has, pending this appeal, changed the method of enforcing such regulations, it is unnecessary for us to determine whether or not the complaint in this case states a cause of action. For that reason the appeal is without merit, and should be dismissed."

As the repeal of subdivision (i) had the effect of abating this suit as a matter of law, the judgments of the Court of Civil Appeals and of the district court are set aside, and the cause is dismissed.

Opinion adopted by the Supreme Court April 24, 1940.

Rehearing overruled May 29, 1940.

Mr. Justice Sharp disqualified and not sitting.