The HOUSTON INDEPENDENT
SCHOOL DISTRICT and Dr.
Joan M. Raymond, Appellants,

v.

The HOUSTON CHRONICLE PUBLISH-
ING COMPANY, Appellee.

No. 01–90–00116–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 9, 1990.

Kelly Frels, Houston, for appellants.

William W. Odgen, Houston, for appellee.

Before WARREN, DUGGAN and HUGHES, JJ.

## OPINION

HUGHES, Justice.

The Houston Independent School District (HISD) and its superintendent, Dr. Joan M. Raymond, appeal a final judgment of November 3, 1989 that requires the HISD to release certain portions of the college transcripts of its administrative personnel to the Houston Chronicle pursuant to the Texas Open Records Act.[1]

### Statement of the case

The Houston Chronicle is a daily newspaper owned by the Houston Chronicle Publishing Company. In July 1988, the Chronicle ran a series of articles about several HISD administrators who purportedly received "mail order" advanced degrees from "degree mill" or "degree factory" universities. The Chronicle also reported that an HISD administrator was paid in excess of $65,000 per year, but did not have a college degree, and that the HISD lacked a procedure to determine if administrators had degrees from accredited universities.

In conjunction with its series of stories, the Chronicle asked the HISD to provide it with the college transcripts of its adminis-

---

1. TEX.REV.CIV.STAT.ANN. art. 6252–17a (Vernon Supp.1990).

trative personnel [2] pursuant to the Open Records Act. Tex.Rev.Civ.Stat.Ann. art. 6252–17a, § 3(a) (Vernon Supp.1990). The version of the relevant portions of section 3(a) of the Open Records Act effective when the Chronicle made its requests (August 10 and 16, 1988) provided:

(a) *All information collected, assembled, or maintained by governmental bodies pursuant to law or ordinance or in connection with the transaction of official business is public information and available to the public during normal business hours of any governmental body*, with the following exceptions only:

(1) information deemed confidential by law, either Constitutional, statutory, or by judicial decision;

(2) information in personnel files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy, provided that all information in personnel files of an individual employee within a governmental body is to be made available to that individual employee or his designated representative as is public information under this Act;

(3) information relating to litigation of a criminal or civil nature and settlement negotiations, to which the state or political subdivision is, or may be, a party, or to which an officer or employee of the state or political subdivision, as a consequence of his office or employment, is or may be a party, that the attorney general or the respective attorneys of the various political subdivisions has determined should be withheld from public inspection;

Ch. 753, § 2, 1983 Tex.Gen.Laws 4546, 4547–48.

The HISD refused to release the transcripts and, on August 17, 1988, its assistant superintendent of legal services, Don-

ald R. Boehm, requested the State Attorney General to issue an open records decision on the issue of whether the HISD must comply with the Chronicle's Open Records Act requests. On August 23, 1988, the Attorney General replied that pending litigation involving the same issue precluded his office from issuing a decision.

On August 18, 1988, while awaiting the Attorney General's reply, the Chronicle filed an application for a writ of mandamus pursuant to the Open Records Act in the 113th District Court to compel the HISD to release the administrators' transcripts.[3] After filing the application, the HISD moved to consolidate its mandamus case with an already-pending action, *Chapman v. Mattox*, that involved the same issues.[4] In *Chapman*, a class action on behalf of public school administrators, the administrators sought a declaratory judgment that the Texas Constitution protects their college transcripts from Open Records Act disclosure. The judge of the court in which *Chapman* was pending, the 152nd District Court, consolidated the lawsuits.

Before the suits were consolidated, the parties in *Chapman* (which by then included the Attorney General), entered into an agreed order abating the class action. As part of the order, the Attorney General agreed not to issue further open records decisions regarding the confidentiality of public school administrators' transcripts until the 71st Legislature addressed the issue in its upcoming session. As a result of the agreed order, the Attorney General's letter of August 23, 1988 told the HISD that it would not provide an opinion.

After a hearing, the court denied the Chronicle's petition for a writ of mandamus because the Chronicle had not met a prerequisite to relief under section 8 of the Act—i.e., the Chronicle had not obtained an

---

**2.** The HISD employs approximately 850 administrators as principals, supervisors, managers, and assistants.

**3.** The Open Records Act provides that a person requesting public information may seek a writ of mandamus if the governmental body refuses to request an attorney's general decision or refuses to supply information that the Attorney

General has determined to be a public record. Tex Rev.Civ.Stat.Ann. art. 6252–17a, § 8(a) (Vernon Supp.1990).

**4.** *Chapman v. Mattox*, No. 88–24250 (Dist. Ct. of Harris County, 152nd Dist. of Texas, Apr. 28, 1988).

Attorney General Open Records Act decision which compelled disclosure. TEX.REV. CIV.STAT.ANN. art. 6252–17a, § 8(a) (Vernon Supp.1990) (person requesting public information may seek a writ of mandamus if the governmental body refuses to request an Attorney General's decision, or refuses to supply information the Attorney General has determined to be a matter of public record).

Frustrated in its attempts to obtain the transcripts, the Chronicle sought leave to file two writs of mandamus in the Texas Supreme Court against the judge of the 152nd District Court [5] (for not issuing a writ of mandamus against the HISD), and against the Attorney General (for not issuing an open records decision pursuant to the agreed order). In *Houston Chronicle Publishing Co. v. Mattox*, 767 S.W.2d 695 (Tex.1989), the supreme court conditionally granted the writ of mandamus, and ordered the Attorney General to issue an open records decision on the issue of the confidentiality of college transcripts. The court held that the agreed order between the Attorney General and the *Chapman* class of public school administrators violated the Texas constitutional prohibition against the suspension of laws. *Id.* at 698 (*citing* TEX. CONST. art. I, § 38) ("[n]o power of suspending laws in this State shall be exercised except by the Legislature.").

Following the supreme court's decision in *Houston Chronicle Publishing Co. v. Mattox* on March 22, 1989, the Attorney General provided the HISD with an open records decision dated April 14, 1989, which cited earlier decisions on the subject of confidentiality of college transcripts of public school administrators [6] and determined that college transcripts were matters of public record and subject to disclosure under the Open Records Act.[7]

After receiving the Attorney General's open records decision, the HISD sued for a declaratory judgment that (1) the Attorney General's decision of April 14 was incorrect, and that (2) releasing administrators' college transcripts would violate the privacy rights guaranteed by the federal and Texas constitutions. In turn, the Chronicle counterclaimed, seeking a writ of mandamus compelling the production of the transcripts in accordance with the Attorney General's decision of April 14.

The Attorney General intervened in the suit, seeking a writ of mandamus against the HISD to release the transcripts.

On May 3, 1989, following a hearing and an inspection of 20 representative college transcripts,[8] the trial court granted the Chronicle's petition for writ of mandamus and denied the HISD's request for declaratory judgment, holding that portions of the representative transcripts were subject to public disclosure under the Open Records Act. Accordingly, the court ordered the HISD to produce the transcripts of *all* its administrators for in camera inspection, so that the court could determine which portions of the transcripts were protected from disclosure by law. The court appointed a master in chancery to review the transcripts; it later ordered the Chronicle to pay the master's fees. The Chronicle's cross-point of error challenges the court's award of the master's fees.

Fourteen days after the trial court ordered the HISD to disclose the transcripts for in camera inspection, Governor William P. Clements, Jr. signed Senate Bill 404 into law, amending the Open Records Act as of May 17, 1989. *See* ch. 110, § 1, 1989 TEX.

---

**5.** The Honorable Jack O'Neill presiding.

**6.** The McAllen, Richardson, Salado, and Klein Independent School Districts had previously requested such opinions from the Attorney General's office during 1987–88. The Klein Independent School District dispute regarding this issue commenced in 1985, and proceeded to the Fifth Circuit Court of Appeals; the United States Supreme Court denied certorari. *See Klein Indep. School Dist. v. Mattox*, 830 F.2d 576 (5th Cir. 1987), *cert. denied*, 485 U.S. 1008, 108 S.Ct. 1473,

99 L.Ed.2d 702 (1988). Subsequent legal challenges have chiefly arisen in state courts.

**7.** Tex.Att'y Gen. ORD–89–105 (1989).

**8.** After inspecting 20 representative college transcripts submitted by the HISD, the court held that all HISD administrator transcripts were "subject to disclosure" pursuant to the Open Records Act.

GEN.LAWS, 466, 466–67. The bill amended the Act, adding the underlined language, as follows:

(a) All information collected, assembled, or maintained by governmental bodies pursuant to law or ordinance in connection with the transaction of official business is public information and available to the public during normal business hours of any governmental body, with the following exceptions:

(2) information in personnel files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy, *and transcripts from institutions of higher education maintained in the personnel files of professional public school employees; provided however, that nothing in this section shall be construed to exempt from disclosure the degree obtained and the curriculum on such transcripts of professional public school employees,* and further provided that all information in personnel files of an individual employee within a governmental body is to be made available to that individual employee or his designated representative....

TEX.REV.CIV.STAT.ANN. art. 6252–17, § 3(a)(2) (Vernon Supp.1990). Citing the newly amended law as authority, the HISD moved the court to vacate its order of May 3. The trial court denied the motion without comment.

In August 1989, the master in chancery released findings that 17 of 37 categories of information contained in the transcripts were confidential and thus protected from disclosure. Meanwhile, in response to the HISD's motion to dismiss the proceedings based on the new version of the law, the court conducted two evidentiary hearings on the legislative intent behind Senate Bill 404, and concluded that the amendment was not intended to apply retroactively. On November 3, 1989, the court entered a final judgment adopting the master's findings, granting the writ of mandamus, and ordering the HISD to release the designated portions of the transcripts. The court also ordered the HISD to pay the master's fees. A week later, the court modified the final judgment to clarify:

1. The Chronicle must pay the HISD's photocopying costs; and

2. The amount the HISD owed the master for her services.

The HISD and Dr. Raymond appeal the trial court's judgment of November 3, 1989, bringing 10 points of error.

Points of error one, three, and four are based on the premise that the trial court's determination of which information should be disclosed occurred *after the amendment took effect,* and thus the trial court erred when it applied the "old" (pre-amendment) law:

1. The trial court erred as a matter of law in ordering the HISD to release its administrators' college transcripts in contravention of the Act as amended;

3. The trial court erred as a matter of law in holding that application of the amendment would be an unconstitutional application of laws, because the Chronicle's rights had not vested in the transcripts before adoption of the amendment.

4. The trial court erred as a matter of law in denying the HISD's motion to vacate its order of mandamus because Senate Bill 404 is the governing law, and the order granting the relief did not comply with the new law.

In contrast, point of error two maintains that if the trial court's decision was made *before* the Act was amended, the "new version" should nonetheless be applied. As point of error two explains:

2. The trial court erred as a matter of law in holding that applying the Act's amendment to the Houston Chronicle's request would be an unconstitutional retroactive application of law, because [1] the legislature intended the amendment to apply retroactively; and [2] retroactive application would not impair vested rights.

We address appellant's second point of error first.

### Point of error 2: Retroactivity

The 1989 amendments to the Open Records Act became effective on May 17,

1989. On May 3, 1989, the trial judge issued an order requiring the HISD to release the administrators' transcripts for further inspection by the court. In accordance with the order of May 3, a master in chancery reviewed the transcripts in October 1989 to determine what portions, if any, should be produced. The court ordered certain portions of the transcripts produced in accordance with the master's findings on November 3, 1989. The Chronicle urges that the Open Records Act, as it existed *before* May 17, 1989, governs the court's order of May 3, 1989. In contrast, the HISD maintains that the amended act applies because the legislature intended the amendment to apply retroactively. The HISD further argues that retroactive application of the amendment (as purportedly intended) is constitutionally acceptable because it would not divest the Chronicle of "vested interests."

■■■ Texas law militates strongly against the retroactive application of laws. The Texas Constitution prohibits "retroactive law[s]." TEX. CONST. art. I, § 16. A retroactive law is one which "take[s] away or impair[s] vested rights acquired under existing laws...." BLACK'S LAW DICTIONARY 1184 (5th ed. 1979) (definition of term "retroactive law"). In Texas, "[a] statute is presumed to be prospective in its operation unless *expressly made retroactive.*" TEX.GOV'T CODE ANN. § 311.022 (Vernon 1988) (emphasis added). A statute may be applied retroactively and not be a "retroactive law," i.e., one that affects rights that accrued before the statute became effective. Texas courts apply statutes retroactively only if "it appears by fair implication from language used that it was the intention of the Legislature to make it applicable to both past and future transactions." *State v. Humble Oil & Refining Co.*, 141 Tex. 40, 41–42, 169 S.W.2d 707, 708–09 (1943). Doubts as to retroactivity are resolved against the retroactive application of a statute. *Ex parte Abell,* 613 S.W.2d 255, 258 (Tex.1981); *Government Personnel Mut. Life Ins. Co. v. Wear*, 151 Tex. 454, 461, 251 S.W.2d 525, 529 (1952). Amendments are also presumed not to apply retroactively. *See Amplifone Corp. v. Camer-on County,* 577 S.W.2d 567 (Tex.Civ.App.—Corpus Christi 1979, no writ). The Austin Court of Appeals has suggested that the application of an amendment to the Open Records Act to defeat a requestor's open records request based on a subsequently enacted amendment to the Act is an impermissible retroactive application of the laws. *See Calvert v. Employees Retirement Sys. of Tex.*, 648 S.W.2d 418, 420 n. 1 (Tex.App.—Austin 1983, writ ref'd n.r. e.). In short, the HISD carries a heavy burden if it wishes to prove that the 1989 amendments to the Open Records Act should apply retroactively.

We examine the language and legislative history of the 1989 amendments to the Open Records Act to determine if the 71st Legislature intended the amendment to apply retroactively.

### Legislative intent

There is no evidence to suggest that the legislature intended the 1989 amendment to the Open Records Act to apply retroactively. Although comments from legislative hearings suggest that the legislators knew of the Chronicle–HISD dispute, there is no clear, unambiguous language from the hearings or *in the statute itself* which is sufficient to overcome the well-entrenched legal hostility to retroactive laws. Further, certain language in the adopted amendment—the "effective immediately" clause—strongly suggests that the amendment was *not* intended to operate retroactively.

The HISD maintains that the "totality of the circumstances" proves that the 71st Legislature intended the 1989 amendments to apply to retroactively. The HISD cites four indicators of retroactive application: (1) the amendment's lack of a "savings clause"; (2) the amendment's inclusion of an "effective immediately" clause; (3) the comments of legislators and witnesses during committee hearings, and the work of alteration committees during the legislative process; and (4) a subsequent Attorney General open records decision which purportedly indicates that the 1989 amendments should be applied retroactively.

### 1. No savings clause

■ The HISD argues that the amendments' lack of a "savings clause" specifically exempting pending suits, means that the legislature wanted the amendment to be applied retroactively. According to the HISD, because the legislature did not *specifically exempt* pending lawsuits from the amendment—the Chronicle–HISD lawsuit being the most prominent—the legislature intended for the amendment to affect pending suits. The HISD cites *Knight v. International Harvester Credit Corp.*, 627 S.W.2d 382, 384 (Tex.1982), for the proposition that "if a statute creating a cause of action is repealed or amended, without a savings clause in favor of pending suits, all suits must stop where the repeal or the amendment finds them." An understanding of *Knight* is essential to the understanding of this dispute.

In *Knight*, a plaintiff sued the seller of a dump truck, claiming that the installment sales contract violated the Texas Consumer Credit Code. The plaintiff filed suit on October 24, 1978. While the suit was pending, the legislature repealed the relevant portion of the Consumer Credit Code. The supreme court held that because the legislature had repealed "a cause of action based on a statute" without providing a savings clause, the plaintiff's cause of action vanished with the repeal of the law. 627 S.W.2d at 384. The *Knight* court relied on *Dickson v. Navarro County Levee Improvement Dist. No. 3*, 135 Tex. 95, 99–100, 139 S.W.2d 257, 259 (1940), in which the court announced:

> It is almost universally recognized that if a statute giving a special remedy [in *Dickson*, the Levee Improvement Act of 1925] is repealed, without a saving clause in favor of the pending suits, all suits must stop where the repeal finds them; and, if final relief has not been granted before the repeal goes into effect, it cannot be granted thereafter. A like general rule is that if a right to recover depends entirely upon a statute, its repeal deprives the court of jurisdiction over the subject matter.

This rule was restated by the court some three years later in *National Carloading Corp. v. Phoenix—El Paso Express Inc.*, 142 Tex. 141, 152, 176 S.W.2d 564, 568 (1943), *cert. denied,* 322 U.S. 747, 64 S.Ct. 1156, 88 L.Ed. 1578 (1944) (applying section 217(b) of the Interstate Commerce Act of 1935 which set overland tariffs).

*Dickson* and its progeny are inapposite because the 71st Legislature did not repeal "a cause of action based on a statute" or revoke a "special remedy" when it amended the Open Records Act. *See Knight,* 627 S.W.2d at 384; *Dickson,* 135 Tex. at 99–100, 139 S.W.2d at 259. The Open Records Act itself—not the 1989 amendments—grants the right to access government information. The 1989 amendments regarding the accessibility of public school administrator transcripts did not "repeal" a cause of action or "revoke" a special remedy; it announced that a certain type of information, i.e., the contents of a public school administrator's transcripts, was no longer accessible pursuant to an *existing* statute. As the Chronicle notes in its brief, the rights and procedures afforded by the Act remain unchanged under the amendment; the amendment merely altered the type of information available. The supreme court's decisions that, absent a savings clause, "causes of action" and "special remedies" are extinguished by legislative pronouncement, are not applicable. The amendments' lack of a savings clause does not warrant a finding that the 71st Legislature intended the 1989 amendment to apply retrospectively. Omission of a savings clause does not prove an intent to make the amendment apply retroactively; it is equally probable that the 71st Legislature knew the prohibition against retroactive legislation and assumed that the courts would grant relief according to the new law (if granted after May 17) or would apply the pre-amendment law (if granted before May 17).

### 2. "Effective immediately" clause

■ The Senate Bill that became the 1989 amendments to the Open Records Act contained an emergency clause providing that the amendment was "effective immedi-

ately" on May 17, 1989, the day it was signed. *See* TEX. S.B. 404, 71st Leg. (1989). The HISD maintains that the amendments' "effective immediately" provision "demonstrates an intent to affect all actions and disputes existing on the day of enactment." We agree, but cannot conclude that the emergency provision proves that the amendment was intended to apply retroactively. In fact, an emergency clause tends to suggest that the legislature did *not* intend the bill to affect matters determined *before* May 17, 1989. The legislature's sole *enacted* pronouncement on the effective date of the bill is the emergency "effective immediately" clause; if the legislature believed the provision could be applied retroactively, there would be no reason to make it effective immediately.

### 3. Legislative history

█ "The cardinal rule to be observed in any case involving statutory interpretation is that a court must look to the intent of the legislature and must construe that statute so as to give effect to that intent." *State v. One 1980 Pontiac*, 707 S.W.2d 881, 882 (Tex.1986). The HISD maintains that testimony from (i) legislative committee hearings, and (ii) changes made to the bill during the legislative session, clearly evidence an intent to make the law apply retroactively.

#### (i) Legislative committee hearings

Two bills were introduced into the 71st Legislature in hopes of restricting the public accessibility of school administrator transcripts: House Bill 806 and Senate Bill 404. Following debate, the Senate bill was passed into law. *See Hearing on H.B. 806 Before the House State Aff. Comm.*, 71st Leg. (Feb. 27, 1989); *Public Hearing on S.B. 404 Before the Sen. State Aff. Comm.*, 71st Leg. (Feb. 27, 1989) (tape recordings on file with Secretaries of Texas Senate and House Records).

The HISD maintains that the following statements of state Senator Don Henderson are evidence of the Senate's intent to make the 1989 amendments apply retroactively:

I don't think this Committee [Senate State Affairs Committee] is overly concerned, or the Senate is overly concerned, with whether or not we're going to have an effect on pending litigation. Most of the gentlemen here were in the Senate or the House when we wrote this Act originally.... so, you know, if someone has misconstrued the intent of the legislature [possibly a reference to the legislature of 1973 or a subsequent amending legislature], surely you would not, at least on that issue, prohibit us or request us not to clear that up.

Senator Henderson continued:

If that black-letter law was misinterpreted [during] the pending of this Legislature by those courts or the Attorney General [the Chronicle–HISD litigation had been mentioned previously on the floor], or the Attorney General perhaps thinks he needed more direction in the black-letter law before he would issue an opinion, surely you would not deny us in this session [the right] to clarify what the intent of the law was.

*Hearing on S.B. 404 Before Sen. State Aff. Comm.*, 71st Leg. 2:30 p.m. (Feb. 27, 1989) (tape recorded comments of Sen. Don Henderson). The Senate's committee hearings do not address retroactive application, but instead focus on the merits and relevance of transcript disclosure. The hearings reveal that the senators knew of pending litigation, in particular, this suit. A witness on behalf of the amendment, David Feldman of the Klein Independent School District, reassured the legislators that the amendment was not being sought to "gain an upper hand in civil litigation." Feldman told the Senate:

There is some litigation ongoing out there that some folks feel has something to do with this legislation and I wanted to be available to testify that it really did not.

[Witnesses on behalf of] the Houston Chronicle will appear before you and testify that this bill will have the effect of interfering with litigation which is presently pending before the Supreme Court. This is not true.

*Hearing on S.B. 404 Before Sen. State Aff. Comm.*, 71st Leg., (Feb. 27, 1989) (tape recording of comments of David Feldman). Nothing in the Senate hearings indicates an intent to make the law apply retroactively.

The hearings before the House State Affairs Committee were concerned with the merits and usefulness of transcript disclosure; retroactivity was not discussed. As in the Senate, some members and witnesses indicated that they were aware of the pending Chronicle–HISD litigation. The HISD does not cite, nor can we find, a statement from the House which clearly shows that a single member thought the amendment would apply retroactively.

To summarize the legislative hearings, the sponsor of the Senate Bill, Senator Don Henderson, believed that the amendment would correct or clarify the meaning of the legislature's earlier enactment. Senator Henderson did not specify *which* legislature provided the controlling intent behind the Open Records Act, and he did not identify that intent. Henderson's comments are not inconsistent with retroactive application, but they are not sufficiently specific to show that he—let alone the entire Senate—thought the law would affect pending suits.

(ii) Changes made to Senate Bill during sessions

The HISD observes that the 71st Legislature "specifically rejected the opportunity to include a savings clause" and concludes that their intentional omission of a savings clause indicates that the amendment was intended to operate retroactively. As noted above, however, the mere fact that the amendment did not contain a savings clause is not probative of retroactive intent. Furthermore, the hearings cited by the HISD in support of its contentions were conducted in regards to the House Bill which was not enacted into law.

In summary, the legislative history of both the Senate and House Bills is not sufficiently probative of a legislative intent to make the 1989 amendments to the Open Records Act apply retroactively.

### 4. Recently issued Attorney General Open Records Decision

On July 26, 1989 (approximately two months after the amendment became law), the Attorney General issued an open records decision informing the Alief Independent School District that "in light of this amendment, governmental bodies must edit" college transcripts of their administrators. *See* Tex. Att'y Gen. ORD–89–526 (1989). The Attorney General's open records decision was issued to the Alief school district, which had received a request for its administrators' transcripts *before* May 17, 1989.

The Attorney General's July 1989 decision is not probative of a legislative intent to apply the 1989 amendments retroactively. First, an open records decision reflects the Attorney General's opinion on a point of law. Open records decisions of the Attorney General should be given "great weight" by the courts of this state, but are not binding on them. *City of Houston v. Houston Chronicle Publishing Co.*, 673 S.W.2d 316, 322 (Tex.App.—Houston [1st Dist.] 1984, no writ). Secondly, the open records decision does not *conclude* (or even opine) the legislature intended retroactive application; it is simply a directive regarding compliance with existing law.

In conclusion, there is insufficient evidence to establish that the 71st Legislature intended the 1989 amendments to the Open Records Act to apply retroactively.

The second prong of the HISD's retroactivity argument asserts that statutes are not *impermissibly* retroactive "unless it can be shown that the [retroactive] application of the law would take away or impair vested rights acquired under existing law." *McCain v. Yost*, 155 Tex. 174, 178, 284 S.W.2d 898, 900 (1955). Relying on *McCain*, the HISD argues that the Chronicle had no "vested right" in the transcripts before May 17, 1989 so that application of Senate Bill 404 to the Chronicle's request would not be an "unconstitutional retroactive application of law." According to the HISD, the Chronicle's interests in the transcripts had not become sufficiently definite

prior to the enactment of the new law so as to warrant the application of the old. We agree that the Chronicle lacked vested rights in the transcripts prior to the Act's amendment, but we reach this point under points of error one, three, and four.

Point of error two is overruled.

### Points of error 1, 3, and 4:
### Vested rights

■■■■ The issue of when the Chronicle obtained "vested rights" in the transcripts is crucial to this appeal. The trial court did not determine a specific date on which the Chronicle's rights vested, but concluded that it occurred sometime before May 17, 1989, so that the "old" law applied. On appeal, the Chronicle asserts that its "vested, substantive rights" in the transcripts accrued in April 1989—the time when the Attorney General's open records decision concluded that the transcripts were matters of public record and were subject to disclosure. Alternatively, the Chronicle insists that its rights vested before May 17, 1989. In contrast, the HISD replies that the Chronicle never obtained vested rights until well after the passage of the amendments; the HISD suggests that the rights vested only after the trial court's final judgment entered.

A "vested right" implies an immediate right or entitlement—it is not an expectation or a contingency. *See Kissick v. Garland Indep. School Dist.*, 330 S.W.2d 708, 712 (Tex.Civ.App.—Dallas 1960, writ ref'd n.r.e.). "When the authority granting the right has the power and discretion to take that right away, it cannot be said to be a vested right." *Abell*, 613 S.W.2d at 262. Engrained in the concept of vested rights is the idea of certainty. When a lawmaking power can declare that a right does not exist, the right is not "fixed or vested." *See McCain*, 155 Tex. at 178, 284 S.W.2d at 900. Further, the triggering date of a vested right must be readily ascertainable. *See Brantley v. Phoenix Ins. Co.*, 536 S.W.2d 72, 74 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.). The filing of a lawsuit in order to obtain relief or pursue a remedy is generally held not to create or

destroy vested rights; the triggering event for the vesting of a right is the resolution of the controversy and the final determination—not the filing of the suit. *See, e.g., In re Roach*, 773 S.W.2d 28, 33 (Tex.App.—Amarillo 1989, writ denied).

The Open Records Act provides that a party requesting information may not obtain the records sought:

until a final determination has been made by the attorney general or, *if suit is filed under the provisions of this Act,* until a *final decision* has been made *by the court* with jurisdiction over the suit.

TEX.REV.CIV.STAT.ANN. art. 6252–17a, § 7(b) (Vernon Supp.1990) (emphasis added). Because the HISD filed suit under the provisions of the Act, the Chronicle's rights, if any, to the transcripts depended on the trial court's final decision. Contrary to the Chronicle's assertion, the trial court's order of May 3, was not a "final decision." On May 3, the trial court merely concluded that 20 representative transcripts which had previously been submitted for in camera inspection contained information which brought them within the purview of the Open Records Act, and accordingly, instructed the HISD to submit *all* the transcripts in its possession for review by a master. The court's order of May 3 was not a final determination of the status of the disputed transcripts. Only two days later—May 5—the court appointed a master to determine which portions of the transcripts should be disclosed. The master reviewed the transcripts and prepared findings of August 1989; the findings were not adopted by the court until November 3, 1989. Based on the findings, the court ordered the HISD to produce 20 categories of information contained in the transcripts. At this point, the court made a final determination of the degree to which the transcripts were subject to disclosure. Before the court arrived at this point, however, Texas law had changed to prohibit the disclosure of the contents of such transcripts. Under the amended law, only "the degree obtained and the curriculum" undertaken by a teacher need to be disclosed. The trial court's final determination of the transcripts' status occurred at a time when the

law prohibited full disclosure. The trial court should have applied the operative law when it decided which portions of the transcripts to turn over to the Chronicle. The master's work is evidence that this decision had not been finalized before May 17, 1989.

When one examines the Chronicle's several attempts to obtain the transcripts during April and May of 1989, it appears that, while the newspaper had began the process to obtain information, the fruits of the process were not yet certain. The questions, "which information?" and "when does it get released?" remained unanswered when the legislature changed the law on May 17, 1989.

We hold that the Chronicle never obtained a vested right to the transcripts under the pre-May 1989 version of the Act. We further hold that after the Act was amended on May 17 to prohibit disclosure of transcripts, the trial court should have dismissed the Chronicle's application for writ of mandamus based on the applicable law at that time. Points of error one, three, and four are sustained.

### Point of error 9

 In point of error nine, the HISD complains that the court erred as a matter of law when it made the HISD pay for the services of the master in chancery. According to the HISD, section 9 of the Open Records Act mandates that costs of reproduction should be borne by the requesting party. See TEX.REV.CIV.STAT.ANN. art. 6252–17a, § 9 (Vernon Supp.1990). The HISD maintains that the cost of the master is an expense incident to reproduction.

Expenses of the master are not reproduction costs, but rather are costs of court which are taxed as "costs of suit." TEX.R. CIV.P. 171.

Because the judgment is reversed, the trial court's award that the HISD should pay for the master's services is deleted. The issue of which party or parties should pay for the services of the master in chancery should be determined by the trial court on remand, after a hearing. TEX.R. CIV.P. 171.

### Point of error 10

In its final point of error, the HISD complains that the trial court erred as a matter of law in ordering it to pay costs of court, because the Chronicle did not "substantially prevail" in the litigation.

Because the judgment is reversed, however, the court costs should be determined by the trial judge following a hearing.

### Cross-point of error

 The Chronicle complains that the trial court abused its discretion by not awarding it reasonable attorneys' fees pursuant to the Uniform Declaratory Judgments Act. TEX.CIV.PRAC. & REM.CODE ANN. § 37.009 (Vernon 1986). According to the Chronicle:

> [The HISD's] overtly dilatory tactics created a procedural log jam to prevent the merits of the Chronicle's open records requests from being heard by the attorney general in the first instance and by each of the three courts in which the suit was filed.

The awarding of attorneys' fees in a declaratory judgment action is a discretionary act of the trial court. *See Oake v. Collins County*, 692 S.W.2d 454, 455 (Tex. 1985). Texas courts have refused to award attorneys' fees when both parties have legitimate interests. See *United Interests, Inc. v. Brewington, Inc.*, 729 S.W.2d 897, 906 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.).

The HISD filed the underlying suit for declaratory judgment in order to protect the confidentiality rights of its administrators, and sought all legal means necessary to enforce their rights. The Chronicle's brief makes unsubstantiated claims that the HISD acted in bad faith. Appellee, cross-appellant, cites no authority which justifies a finding that the trial court abused its discretion in this matter, and we decline to so find.

The Chronicle's cross-point is overruled.

### Conclusion

Because the Chronicle did not obtain a vested right to any information contained

in the transcripts until *after* the Open Records Act was amended, we hold that the trial court erred in finding that the application of the Act as amended would work an unconstitutional retroactive application of law. The trial court further erred as a matter of law in denying the HISD's motion to vacate mandamus, because it did not correctly apply the applicable law.

The judgment of the trial court is reversed; the cause is remanded for further proceedings in regards to costs and fees in accordance with the views expressed in this opinion. On remand, the trial court should order the HISD to release only that information in the transcripts as is required by the version of the Open Records Act currently in effect. See TEX.REV.CIV.STAT.ANN. art. 6252–17a, § 3(a) (Vernon Supp.1990).